IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOEL FRIEDMAN,

Plaintiff,

v.

MID-WEST FAMILY SERVICES LLP,

Defendant.

OPINION and ORDER

26-cv-263-jdp

Plaintiff Joel Friedman worked as a sales development representative for defendant Mid-West Family Services LLP, a radio and marketing company that operates under the business name Mid-West Family Madison. Friedman contends that Mid-West Family failed to accommodate his attention deficit hyperactivity disorder (ADHD) and then fired him because of his disability, in violation of the Americans with Disabilities Act of 1990 (ADA).

Mid-West Family moves to dismiss Friedman's complaint, Dkt. 6, contending that he fails to state a claim under the ADA and that he failed to exhaust his retaliation claim. The court will deny Mid-West Family's motion to dismiss because Friedman has stated plausible claims under the ADA, and Mid-West Family has not met its burden to show a failure to exhaust administrative remedies.

## BACKGROUND

The following allegations are taken from Friedman's complaint, Dkt. 1, and the documents attached to it. The court will accept the allegations as true and draw all reasonable inferences in Friedman's favor for purposes of Mid-West Family's motion to dismiss. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Friedman interviewed for the sales development representative position with Mid-West Family in early 2024. During his second interview, Friedman told his future supervisor, Jerad Clark, and the executive vice president of Mid-West Family that he had ADHD. After Friedman was hired, Clark instructed him to keep his door open to foster community and help him learn about the job. But Friedman's office was in an area with high foot traffic and frequent conversations, so Friedman began to struggle with staying concentrated on his work. Friedman started closing his office door, but Clark repeatedly reprimanded him for doing so. Friedman also took breaks throughout the day to help him cope with his ADHD, but Clark reprimanded him for doing so. Friedman requested a quieter office space to improve his productivity, explaining that his office location was making it hard for him to focus. Clark denied the request.

On March 25, Mid-West Family disciplined Friedman and placed him on a 10-day performance improvement plan. Mid-West Family asserted that Friedman's performance was deficient in three ways: (1) he was tardy; (2) he was untimely in responding to communications from colleagues; and (3) he was underproductive. Friedman emailed Clark and explained that his "ADD tendencies to hyperfocus on specific tasks . . . cause [him] to misdirect [his] attention when it is needed elsewhere." Dkt. 1, at 7.[1] He also requested that Mid-West Family use a "primary internal messaging board" because it was "exceedingly difficult for [him] to keep up between [the] communication channels being scattered." *Id.* Clark did not respond to Friedman's request. Four days later, Mid-West Family fired Friedman.

The court will discuss additional allegations as they become relevant to the analysis.

[1] Citations to filings from the docket use the page numbers assigned by the court's electronic filing system, not the page numbers in the original document.

ANALYSIS

Friedman asserts that Mid-West Family violated the ADA by: (1) failing to provide him with reasonable accommodations for his ADHD; (2) retaliating against him for requesting accommodations; and (3) firing him because of his ADHD. The ADA bars employers from discriminating against individuals because of their disabilities regarding the terms, conditions, and privileges of their employment. 42 U.S.C. § 12112(a). The ADA also bars employers from retaliating against individuals for asserting their right to be free from disability discrimination. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

Mid-West Family moves to dismiss Friedman's complaint under Federal Rule of Civil Procedure 12(b)(6), Dkt. 6, contending that it fails to state a claim for relief. Rule 12(b)(6) requires a plaintiff to plead a plausible claim for relief, which means that the complaint must contain facts from which the court can reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the plaintiff must include sufficient details in their complaint to "present a story that holds together" under the relevant law. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). At the motion-to-dismiss stage, the court accepts the allegations in the complaint as true and resolves all reasonable inferences in the plaintiff's favor. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024).

**A. Failure-to-accommodate claim**

Friedman contends that Mid-West Family failed to accommodate his ADHD because it denied his request for a quieter office and ignored his request for a single messaging platform. *See* Dkt. 8, at 8–11. To state a failure-to-accommodate claim under the ADA, a plaintiff must allege: (1) he was a qualified individual with a disability; (2) the employer was aware of his

disability; and (3) the employer failed to reasonably accommodate his disability. *Jezior v. City of Chicago*, 179 F.4th 569, 574 (7th Cir. 2026). For purposes of its motion to dismiss, Mid-West Family focuses on the third element, contending that Friedman fails to state a claim because he did not provide sufficient notice that he needed accommodations. Mid-West Family argues that Friedman did not "tie[] [his] disability to a needed workplace change," meaning that Friedman did not tell Mid-West Family that he needed a different office location and a single messaging platform *because of his ADHD*. Dkt. 7, at 4.

But the allegations in Friedman's complaint indicate that Mid-West Family knew that he was requesting accommodations to ameliorate the effects of his ADHD. Friedman alleges that his ADHD causes him to struggle with focusing, multitasking, and sitting still. Friedman told Clark that he needed a quieter office location because he was struggling to concentrate on his work with the "constant noise" from the foot traffic and conversations. Dkt. 1, at 4. But Clark denied the request because the company is a "No Excuses" environment. *Id.* at 5. Friedman also told Clark that he needed a single messaging platform because it was "exceedingly difficult for [him] to keep up" with multiple communication channels and because of his "ADD tendencies to hyperfocus on specific tasks that cause [him] to misdirect [his] attention when it is needed." *Id.* at 7. Clark ignored the request. It is reasonable to infer from these allegations that Mid-West Family was aware that Friedman was requesting accommodations for his ADHD but that Mid-West Family failed to provide him with reasonable accommodations.

In any event, the ADA does not require an employee to state explicitly that he wants an accommodation for his particular disability. *See Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996). Instead, if the employer knows that the employee has a

disability that might require an accommodation, then the employer must follow up with the employee to determine what accommodations are appropriate and available; the employer cannot "shield itself from liability [under the ADA] by choosing not to follow up on an employee's requests for assistance, or by intentionally remaining in the dark." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005). Stated another way, "when clarification is needed as to the nature of an employee's disability or the particular accommodation required, it is the employer's responsibility to solicit that information from the employee." *EEOC v. Wal-Mart Stores E., L.P.*, 113 F.4th 777, 788 (7th Cir. 2024). Thus, even if Friedman's requests for accommodations were ambiguous, Mid-West needed to reach out to Friedman for further clarification; it couldn't just leave him hanging.

**B. Retaliation claim**

Friedman contends that Mid-West Family fired him in retaliation for requesting accommodations for his ADHD. *See* Dkt. 8, at 4–8. Mid-West Family does not contend that the allegations in Friedman's complaint fail to state a claim. Instead, Mid-West Family contends that Friedman's retaliation claim is procedurally barred because he did not exhaust his administrative remedies by raising the retaliation claim in his discrimination charge with Wisconsin's Equal Rights Division (ERD). Dkt. 7, at 2–3. Failure to exhaust administrative remedies is an affirmative defense. *See Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). It is generally improper to grant a motion to dismiss because of an affirmative defense. *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Dismissal is nevertheless appropriate if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

A plaintiff suing under the ADA exhausts his administrative remedies by filing a charge with the ERD and receiving a right-to-sue letter. *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 857 n.11 (7th Cir. 2019). The plaintiff may proceed only on the claims in his ERD charge or those that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (citation omitted). Put differently, there must be a "reasonable relationship between the allegations in the [ERD] charge and the claims in the complaint," and the claims in the complaint must "reasonably be expected to grow out of an investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This means that the plaintiff "cannot bring a new claim [in federal court] that is 'inconsistent with' the claim in his [ERD] charge, even if the new claim 'involves the same parties and the same facts as the other claim.'" *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004–05 (7th Cir. 2019) (citation omitted).

With these background principles in mind, the court turns to the allegations in Friedman's ERD charge. In his ERD charge, Friedman alleged that Mid-West Family placed him on a performance-improvement plan for insufficient communication with his managers and prospective clients. Friedman followed up with his managers to "remind[]" them of his "limitations of having ADD/ADHD." Dkt. 1, Ex. 3, at 2. He also "requested a reasonable accommodation for [his] disability, asking if it would be possible to condense these multiple communication channels to allow for greater message visibility and simpler coordination with co-workers and prospects." *Id.* But Friedman's managers did not address his request. Friedman alleges that Mid-West Family fired him "despite showing marked improvements in work quality . . . . a full work week before the mutually agreed upon re-evaluation period." *Id.*

Friedman did not use the term "retaliation" or similar language in his ERD charge to describe Mid-West Family's conduct. Nor did he allege that Mid-West Family fired him because of his accommodation requests. But courts review the scope of an ERD charge liberally. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015). As relevant here, this liberal review means that there need not be an "exact correspondence between the words of the [ERD] charge and the judicial complaint." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 865–66 (7th Cir. 1985). Friedman's ERD charge failed to allege causation for purposes of his retaliation claim, but it is reasonable to infer from the allegations in his ERD charge that, given the timing of his termination, Friedman was accusing Mid-West Family of firing him in retaliation for requesting an accommodation for his ADHD. Mid-West Family has not shown that Friedman pleaded himself out of court by failing to exhaust his administrative remedies for his retaliation claim.

**C. Discriminatory-termination claim**

Friedman contends that Mid-West Family discriminated against him by terminating him because of his ADHD. To state a discriminatory-termination claim under the ADA, a plaintiff must allege: (1) he is disabled; (2) he is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 490 (7th Cir. 2020). Mid-West Family contends that Friedman fails to state a claim because he was fired for reasons other than his disability. Specifically, Mid-West Family argues that it fired Friedman because he was five minutes late for a sales meeting, made disparaging remarks about the company, and failed to meet the conditions of his performance-improvement plan. *See* Dkt. 7, at 7–9.

At the summary-judgment stage, an employer's legitimate reason for firing its employee is evidence that weighs against an inference of prohibited discrimination. *See Arnold v. United Airlines, Inc.*, 142 F.4th 460, 469–74 (7th Cir. 2025). But at the motion-to-dismiss stage, the court must determine whether the employee's discriminatory-termination claim is plausible, that is, whether it is reasonable to infer from the allegations in the employee's complaint that the employer terminated the employee because of his disability. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015).

In his complaint, Friedman admits that he was late to the sales meeting because of bad weather on Madison's Beltline Highway. Dkt. 1, at 8. But Friedman alleges that individuals with ADHD "face unique time management, perception, and estimation challenges." *Id.* at 3. Friedman also alleges that, during an earlier incident, he told Mid-West Family that "his ADHD symptoms sometimes cause[] him to lose track of time." *Id.* at 8. Friedman asserts that Mid-West Family's other reasons for firing him were lies. *See id.* at 8–9. He says that he did not make disparaging statements about Mid-West Family and would not have done so because "he was on his best behavior in the wake of the [performance-improvement plan] and actively trying to impress management." *Id.* at 8. And he says that, contrary to Mid-West Family's assertion, he was satisfactorily performing his job. *See id.* at 9. It is reasonable to infer from these allegations that Mid-West Family's reasons for firing Friedman were a pretext for disability discrimination. Friedman has stated a plausible discriminatory-termination claim.

ORDER

IT IS ORDERED that defendant Mid-West Family Services LLP's motion to dismiss, Dkt. 6, is DENIED.

Entered September 11, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge